Mullen, J.
The general term in the first district, held, " in the case of the Bank of the Commonwealth v. Van *83 Vleck, in December last, that the plaintiff, who had loaned to the defendant $10,000 in gold, to be paid in gold, was entitled to judgment for an amount equal to the value of the gold, at the time of the trial, in legal tender notes.
The plaintiff in the case before us claims to recover judgment for a sum in currency equal to $2,000 in gold, upon a bill of exchange drawn for that sum in Charlottetown, in Prince Edward’s Island, by A. A. McDonald & Bro., on the defendant, payable in sixty days from the date thereof, and which was presented to and accepted by the defendant. The bill upon its face is payable in United States gold coin.
It will be seen that the cases are identical in principle ; and whatever my own views of the law might be, respect for the court that decided the case of the Bank of the Commonwealth v. Van Vleek and Tucker, would constrain me to follow its decision, leaving it to the court of appeals to reverse the judgment, if, upon more full examination, it shall be found to be erroneous. I heard this case in that district,- while holding court at the request of the presiding ‘ justice. I am not, therefore, at liberty to disregard a decision of its general term upon the precise question presented to me for decision.
I cannot leave the case, however, without briefly giving my reasons for concurring, as I do, in the conclusion at which the general term arrived in the case cited.
The constitutionality of the legal tender act is not open for discussion in this State, since the decision of the court of appeals in the case of the Metropolitan Bank v. Van Dyck (27 N. Y, 400). It is also the settled law of the State, that in actions for the recovery of debts contracted before the passage of the legal tender act, the plaintiff can only recover the sum agreed to be paid, without any allowance for the difference in value between gold and legal tenders, notwithstanding the debtor may have agreed to pay it in gold or silver coin.
It must be considered, also, that the courts of this country that have been called to pass on this question, have been nearly unanimous in holding that debts con *84 tracted since the passage of the legal tender act, payable by the express agreement of the debtor in gold and silver coin, may be paid by the' same amount in legal tender notes.
A contract entered into prior to 1862 for the payment of a given sum of money in gold and silver coin, received the same construction as it would have received had the words specifying in what the payment should be made not been in the contract. It was by law payable only in gold and silver coin, at the election of the creditor, if that provision had not been incorporated in it; in other words, it was construed as if it read, “payable in legal currency.” When, therefore, such a contract was to be satisfied by payment since 1862, it receives the same construction, and is paid by an equal amount of legal tender notes. This construction of the contract became indispensable; or debtors would have been ruined, and the business of the country destroyed.
If this construction had practically the effect of taking from the creditor a portion of his property, it operated with equal severity upon the debtor ; his property was reduced in value in the same proportion. The loss fell equally upon all classes. It was a part of the price we had to pay to save the republic. It operated very harshly upon the foreign creditor, holding a debt contracted before the war, and payable in this country, to compel him to accept payment in paper in lieu of gold and silver. But it was impossible to have one rule of law for our own citizens, and another for foreigners ; the same rule of construction must apply to both, and hence each must accept the same measure of satisfaction.
Every-contract then made was made, impliedly, if not expressly, subject to the power of Congress to make paper instead of coin a legal tender, or to debase the coin so as to render it of no more value than the same amount in legal tender notes. Whether such laws are just or wise, is a question for the legislative department, and with which the courts of the country have nothing to do.
Congress did not see fit to debase the gold and silver *85 coin of the country, nor has it repealed the law making gold and silver a legal tender in payment of debts, but it has secured a similar result by making a thing of inferior value of equivalent value in payment of debts. The debtor is no longer obliged to pay gold and silver, and the creditor is obliged to accept government notes in satisfaction of his debt.
The intrinsic difference in value between the paper made a legal tender by Congress, and gold and silver, is recognized both at home and abroad. Property is sold in our own and foreign markets at one price for gold, and for another in paper. This distinction can no more be got rid of than can the distinction between the cotton or linen out of which the paper is manufactured on which these notes are printed, and the metal out of which the coin is made.
It was not, I apprehend, the intention of the framers of the legal tender act to prohibit the making of contracts payable in coin. The necessities of commerce require that such contracts should be held valid. To hold that they cannot be made would be a most unwise and unnecessary interference with the rights of the citizen, and is uncalled for by the creditors of the government or the necessities of the people.
■A 'merchant of New York orders from a manufacturer in England $5,000 worth of cotton goods ; the Englishman understands this to mean $5,000 worth of goods, estimating the dollar as a dollar in gold ; the account is made out on this basis. If the sale is on credit and to be paid in this country, the seller can only be paid by $5,000 in gold, or them equivalent.
To obtain this he must make out his account by adding to the $5,000 the amount necessary to make legal tender notes equal to gold. Before his account can reach this country, gold may have materially increased or lessened in. price. By taking the value of gold on the day he ships the goods, he may subject himself to a loss, if gold should appreciate in value before the account is adjusted, or he may be demanding more than the purchaser is bound to pay if it has depreciated. If he leaves the amount to be *86 adjusted by the purchaser, a door is open for misunderstanding and litigations Between countries enjoying the advantages of telegraphic communication, this difficulty may not arise, but there is still so large a portion of the world with which we have dealings, that has no such communication, that the practical difficulty exists in all its force.
It is also true that merchants may provide by their contracts against the annoyance to which I have referred. But the fewer restrictions upon and embarrassments laid in the way of commercial intercourse, the better. Instead of subjecting merchants to this uncertain and unsatisfactory mode of dealing, why not permit them to agree that an indebtedness shall be payable and paid in gold or silver, or its equivalent in paper ? It cannot be doubted but that, when a contract, made since 1862, provides for payment of a given sum in gold coin, it is the intention that it shall be thus paid. If the intention of the parties is to govern, what right have the courts to disregard it, and compel the creditor to receive a sum less than it was the understanding and intention he should receive %
The reasoning of the judges seems to be that when the contract is to be performed here, the amount to be paid by its terms must be understood as payable in legal tender notes, and that the parties cannot agree that it shall be paid in coin. If it is legally possible for parties to bind themselves thus tq pay, the defendant has done it in this case ; the language is not open to two constructions, and the intent is perfectly obvious. To reach the result stated; the courts have been governed by the doctrine of the case of Penny v. Gleason (5 Wend., 394). In that case the defendant’s agreement was to pay a certain number of dollars and cents in salt, at a price named per barrel; the court held that the measure of damages for a breach of the contract was the amount named in the contract, and not the value of the salt. The reasoning of the chancellor is, that by the contract the defendant had an election to deliver the salt or pay the amount in money; and, hav *87 ing failed to deliver the salt, he was bound to pay the money.
I am unable to perceive that the decision in that case has any application to this. Salt was not and never had been .a standard of value. Gold has been and is by law a legal standard of value. The price of salt was not fixed, but fluctuated as did other commodities in the market. Gold has not in fact varied in value. The paper which has been made a legal tender in payment of debts has varied, and because it is made a legal tender, and gold has thereby been treated as an article of merchandise, its value seems to fluctuate, whereas it is that of the paper only which fluctuates. That it is not the coin that changes in value, is proved by its being received in payment of debts in foreign countries, at the same valuation it received before the act of 1862, and it is so received here when we are required to go back to the gold standard.
We know that the value of the American gold dollar is, to-day, in this country and in Europe, of the same value it was seven years ago, and that value is not changed because we have established another and wholly fictitious standard, with respect to which, and with respect to which alone, its value has changed.
We have, as I have already suggested, two standards of value recognized by law, the one gold and silver, the other paper; either is a legal tender for a debt, and a contract which calls for payment in gold, calls for a payment in currency recognized by law, and there is nothing in law or in reason whicn forbids the parties making such an agreement; and I insist that when it is manifest that it was the intention of the parties that payment should be made in" coin instead of paper, it is the duty of the courts to carry into effect such intention.
If the $2,000, to pay which the bill in suit was drawn, were borrowed, the borrower, it is to be presumed, received it in gold or in property at gold prices.
If the bill does not provide for the payment of $2,000 in gold, will any one inform me how the lender could have framed his contract so as to secure to himself pay *88 ment "by the drawee of that sum; on the day it should-"be presented for acceptance or payment, and interest. As I have attempted to illustrate the case of the purchaser of the goods in England," it would be practically impossible to fill up the bill with an amount which, if paid in currency, would exactly equal the same number of dollars in gold. He might transmit the bill in blank to an agent to fill up with the true amount before presentation, or"he might draw the bill, “for such a sum as will, on the day of presentation for payment, be equal to $2,000 in gold.”
But when the bill is thus drawn, is the intention of the parties any more clearly expressed that the bill is to be paid in gold or its equivalent, than when it is drawn “payable in gold coin of the "United States?"
The sum named in a bill or other contract is, in the absence of any provision to the contrary,’ presumptively payable in whatever is at the time a legal tender in payment of debts •, but when the parties designate some other currency which is not illegal, it is the right of the creditor to have awarded to him such measure of damages as will constitute payment in the currency intended, and it is the duty of the courts to award it. If gold and silver were not, both in law and in fact, legal currency, recognized and adopted by all classes of men, there might be some excuse for treating them as if they were articles of merchandise, and the debtor had the right to pay in them or in paper, at his election. But so long as they are recognized as currency, debts payable in them should be enforced, and the intention of the parties should have effect. I therefore order judgment in favor of the plaintiff for $2,925.